E
X
H
I
B
I
T

H

**EXHIBIT H**

# UNITED STATE DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

YOLANDA ALDANA and LEYVIER HERRERA,
her husband, YOLANDA ALDANA as mother
and natural guardian of K.M., a minor, as
mother and natural guardian of A.M., a minor
as mother and natural guardian of A.A., a
minor, and as mother and natural guardian of
K.H., a minor,

                                            **Case No. 5:18-CV-00157-JSM-PRL**

        Plaintiffs,

vs.

PROGRESSIVE AMERICAN INSURANCE
COMPANY,

        Defendant,

_____/

## WRITTEN REPORT PURSUANT TO FEDERAL RULE CIVIL PROCEDURE 26 (a)(2)(B).

## GEORGE A. VAKA'S EXPERT REPORT AND OPINIONS

### Introduction

I, George A. Vaka, Esquire, of Vaka Law Group, P.L., 777 South Harbour Island Boulevard, Tampa, Florida, 33602, expect to testify as an expert witness for the Plaintiffs, Yolanda Aldana and Leyvier Herrera, and Yolanda Aldana as mother and natural guardian of K.M., a minor, as mother and natural guardian of A.M., a minor, as mother and natural guardian of A.A., a minor, and as mother and natural guardian of K.H., a minor, regarding case number 5:18-CV-00157-JSM-PRL, in the United States District Court for the Middle District of Florida, Ocala Division, styled as Yolanda Aldana and Leyvier Herrera, her husband, Yolanda Aldana as mother and natural guardian of K.M., a minor, as mother and natural guardian of A.M., a minor, as mother and natural

1

guardian of A.A., a minor, and as mother and natural guardian of K.H., a minor, Plaintiffs, versus Progressive American Insurance Company, Defendant.

I am President and managing member of Vaka Law Group, P.L., a law firm whose practice is focused upon trial work and appeals of matters frequently involving tort and insurance matters. My current CV is attached as Exhibit A to this report. As a general summary to the CV, I have been licensed to practice law in Florida since 1983. In 1983, I commenced my practice as an associate attorney and, in 1988, became a shareholder at the firm formerly known as Fowler, White, Gillen, Boggs, Villareal and Banker, P.A. From 1988 until January, 1999, I was the managing shareholder of the firm's appellate practice and insurance coverage litigations sections. At the time that I left Fowler White in January, 1999, I actively supervised 16-17 lawyers, the majority of whom represented personal lines and commercial lines insurance companies, in matters regarding the interpretation of their contractual and statutory obligations, in general, and frequently, the analysis, interpretation of and defense of claims of actions associated with their alleged "bad faith" claims handling regarding discreet claims made directly by the claimants against the insurance companies or by their insureds. During my employment at Fowler White, I actively participated in the defense of such claims on behalf of the insurance company clients, and through my voluntary bar association work, primarily through the Florida Defense Lawyers Association, I participated at the appellate level, submitting numerous Amicus Briefs in support of insurance company positions regarding issues involving the "good faith" claims handling obligations of liability insurance companies and statutory obligations imposed upon insurance companies in Florida pursuant to Florida Statute §624.155, et.al. During my tenure as a defense lawyer, I both published and spoke at seminars concerning these "good faith" obligations.

From January, 1999 through present, I have continued to be actively involved in the litigation of matters involving insurance contracts, and matters arising from the obligations of "good faith" and "fair dealing" required of insurance companies who do business in the State of Florida. My representation since January of 1999 has not been defending the insurance company interests as I did previously; rather, I have represented the interests of the insured or the insured's assignee in the prosecution of "bad faith" actions against the insurance companies, or accepting the representation of the interests adverse to the insurance companies in an appeal.

In this matter, I anticipate I will testify whether Progressive American Insurance Company's conduct in the Aldana vs. Pyles matter was consistent with the duties required of a liability insurer in Florida handling claims against its insured and whether the company acted with requisite care in the adjustment of multiple claims arising out of a December 6, 2013 automobile collision between a vehicle operated by Progressive's insured, Mr. Pyles who was traveling at a high rate of speed when he crashed into the back of Ms. Aldana's Nissan Sentra which was stopped at a red light and at the time, was occupied by Ms. Aldana and her four minor children, Kevin Martinez, Anthony Martinez, Alejandro Aldana and Kenneth Herrera. (Aldana family)

**A.**     **Materials reviewed and relied upon as the basis for my opinions**

I have been provided the following information/data that I have reviewed, considered and relied upon in the formulations of my opinions:

1.     Amended Complaint in Yolanda Aldana, et al. vs. Progressive American Insurance Company, dated March 8, 2018;

2.     Answer and Affirmative Defenses to Amended Complaint by Progressive American Insurance Company, dated April 10, 2018;

3.     Deposition transcript of Todd Parnell dated January 22, 2019;

4.     Deposition transcript of Kathy Wallace dated January 22, 2019;

5. Deposition transcript of Joyce Richardson, corporate representative, dated January 16, 2019;

6. Deposition transcript of James Ross Davis, Esquire, dated January 29, 2019;

7. Personnel file of Jill Brown;

8. Personnel file of Caz Burdick;

9. File of correspondence and documents identified as Chronology 2013;

10. Correspondence and file documents identified as Chronology 2014;

11. Correspondence and claims documents identified as Chronology 2015;

12. Correspondence and claims documents identified as Chronology 2016;

13. Correspondence and claims documents identified as Chronology 2017;

14. Various documents referenced as miscellaneous claims documents;

15. Claims notes referenced CFS (13) 1 through 242;

16. Claims notes referenced CFS (16) 1 through 16;

17. 2012 PowerPoint presentation, pages 1 through 101;

18. June 2015 PowerPoint presentation, pages 1 through 68;

19. Multiple competing claims handling PowerPoint presentation MCC 1 through 46;

20. MCC supplement PowerPoint presentation;

21. MCC Supp 1 through MCC Supp 61;

22. Kathy Wallace's personnel file;

23. Susan Soard's personnel file;

24. Progressive Group of Insurance Companies Claims Litigation Management Guidelines;

25. Claims Standards, Claims Standards 1 through Claims Standards 102;

26. Claims Operating Procedures, COP 1 through COP 250.

**B. Compensation to be paid for examination of this case and testimony in the case**

I am to be compensated my normal hourly rate of $600.00 an hour for all work performed on this matter. Vaka Law Group is also to be compensated for all reasonably related incurred expenses, such as travel expenses, Xerox/scanning/imaging, long-distance phone calls and all electronic legal research. All compensation to be paid in this matter is to be paid to Vaka Law Group, P.L.

**C. Prior cases within the previous four (4) years which I have testified as an expert at trial or at deposition**

See attached Exhibit B.

**D. Opinions**

Progressive American Insurance Company did not exercise the requisite care, diligence and prudence as the liability insurer for Nathan and Alisha Pyles in its handling of the claims arising from the collision on December 6, 2013. Within days of the accident, Progressive was provided with information that the vehicle driven by Mr. Pyles was the rear vehicle in a 3 car collision. The information available to Progressive showed that the 2 vehicles in front of the Pyles vehicle had been stopped when the Nissan occupied by Ms. Aldana and her children were struck from the rear and pushed into the vehicle in front of it. Progressive recognized that there was no comparative fault upon the operator of the two vehicles in front of Mr. Pyles and concluded that Mr. Pyles was 100% liable for the accident.

Likewise, within days of the accident, Progressive recognized that there were multiple bodily injury claims involving serious injury. Progressive was advised that the minor occupant of the Pyles vehicle, Aubrey Heffler, was not injured in the accident.

The same day that the accident was reported, Progressive also knew that all five people in the Aldana vehicle were transported to the emergency room, noting that one of the minor children

was not breathing at the scene and had been transported from Ocala to Shands Hospital in Gainesville. Progressive knew that Ms. Aldana was still in the hospital at that time and the initial information indicated that she sustained broken ribs. Progressive also knew that each of the minor children who were occupants of the Aldana vehicle sustained serious bodily injuries including fractured legs, hips, jaw and other facial injuries. By December 10, 2013, the day following the report of the accident, Progressive's representative, Kathy Wallace, recognized that the claims potentially would exceed the policy limits and there was a need to explain that exposure to the insured and the operator Mr. Pyles. That same day, claims director, Joyce Richardson, advised Ms. Wallace to set the reserves in the claims file accordingly and to discuss the potential for a global offer of the policy limits.

On December 12, 2013, Progressive was notified that attorney, James Ross Davis would be representing Ms. Aldana and her children. That same day, Progressive sent letters to Mr. and Mrs. Pyles stating that the policy limits may not be sufficient to satisfy the claims of the Aldanas.

On December 16, 2013, Progressive received additional information concerning the injuries sustained by the occupants of the Aldana vehicle. Progressive was apprised that Ms. Aldana had fractured ribs and a lacerated liver and had been released from the hospital after 3 or 4 days at Ocala Regional Hospital. Her son, Kevin, had two fractured femurs, a fractured jaw, a fractured bone in his neck, and had knocked out two teeth and was still in the hospital. Her son, Anthony, had a fractured pelvis with two possible surgeries and was still admitted to the hospital. Her son, Alejandro, had a fractured femur and had been released from the hospital. Her youngest son, Kenneth, has possible traumatic brain injury, possible paralysis and was still admitted to the hospital.

That same day, Progressive learned that Jaron Ang, the driver of the vehicle in front of the Aldana vehicle, was injured but that he was in the course and scope of his employment and receiving worker's compensation benefits to take care of his injuries.

The following day, Progressive established the reserves for the various claims, reserving $50,000.00 for Ms. Aldana's claim, $125,000.00 for 12-year old Kevin Martinez, $125,000.00 for Anthony Martinez, $70,000.00 for Alejandro Aldana, and $125,000.00 for Kenneth Herrera, the 23 month old. In establishing the reserves, Ms. Wallace also reserved $2,500.00 for the potential claim of Jaron Ang whose injuries were described as soft tissue, neck/leg pain and, $2,500.00 for a potential claim by Aubrey Heffler. Ms. Wallace requested the reserves that exceeded her authority but was doing so so that she could make a global offer of the full $500,000.00 to "all claimants." The global offer required the claimants to agree among themselves to divide the money, without Progressive adjusting the losses.

On the following day, December 19, 2013, Ms. Wallace spoke with personal counsel for the Pyles, Mr. Batsel. At that point in time, she was advised that the Pyles had no additional automobile policies, no umbrella policy and that Mr. Pyles was not in the course and scope of his employment at the time of the loss. She also obtained Mr. Batsel's authority to exclude the minor daughter from the global settlement offer that she had requested authority to present.

The claims file reflects that on December 23, 2013, a global offer to settle for the payment of the policy limits was delivered to Ms. Aldana and to her attorney, Mr. Davis. The letters, dated December 18, 2013 sent by Ms. Wallace offered the payment of the policy limits of $500,000.00 collectively to all seven claimants, including Jaron Ang and Aubrey Heffler who was not making a claim, in exchange for a full and final release of Mr. and Mrs. Pyles. The letter requested that the claimants reach agreement upon apportionment of the $500,000.00 policy limit and if the claimants

were unable, Progressive would move forward with the scheduling of a global settlement conference. On December 30, 2013, William A. Davis, an attorney with Cole, Scott & Kissane, P.A., the firm hired by Progressive to represent Mr. and Mrs. Pyles sent letters to each of the individual claimants advising them that a settlement conference had been scheduled for January 7, 2014.

On January 7, 2014, J. Ross Davis, Esquire, the attorney for the Aldana family, rejected the offer of the global settlement and indicated that the 2-year old was still in ICU at Shands.

The claims file reflects that on December 30, 2013, Progressive knew that Mr. Ang was claiming injuries but that his injuries appeared likely to be soft tissue. On January 14, 2014, William A. Davis at Cole Scott and Kissane recommended that Progressive evaluate the claims separately and make individual offers without a global mediation. Progressive did not follow this advice, and instead sent substantially the same letter insisting on a global offer requiring that the claimants agree on the division of the policy proceeds. Kathy Wallace confirmed Mr. Ang's condition on February 4, 2014 when she spoke to Mr. Ang's attorney who indicated that Mr. Ang had soft tissue injuries only, had worker's compensation benefits available to him with minimal wage loss. The note reflects that the lawyer also understood the multiple claimant issues with serious injuries to the other parties and that it was acceptable to him to wait for a global settlement conference while the other attorney attempted to obtain more information regarding the extent of the injury to the minor claimants. On February 13, 2014, Kathy Wallace sent correspondence to J. Ross Davis and Brian Laird, attorney for Jaron Ang. In that correspondence she requested that the attorneys accept Progressive's continuing offer to tender the full $500,000.00 limits collectively to all the remaining claimants in exchange for releases in favor of Mr. and Mrs. Pyles. Progressive renewed that offer on March 12, 2014. On March 27, 2014, Kathy Wallace received a letter from

J. Ross Davis indicating that his client's medical bills were now mounting towards $1,000,000.00 thus far and "that our $500,000.00 is nothing more than a drop in the bucket." The February and March letters were substantively identical as both required that the claimants agree on the apportionment of the policy limits without Progressive adjusting the losses.

Progressive sent correspondence to Mr. Laird and Mr. Davis on April 21, 2014, May 15, 2014, July 17, 2014, August 14, 2014, September 11, 2014, each time extending the previously offered global settlement to be divided among the claimants. On July 3, 2014, Ang's attorney, Mr. Laird sent a letter to Progressive inviting Progressive to make his client an offer. Progressive did not advise its insureds of this letter, nor did it seek the insured' input on how to respond to Mr. Laird's letter.

At no point in time prior to August of 2014, did Progressive engage in an independent analysis of each of the potential bodily injury claims asserted by Ms. Aldana and her family members. Nowhere in the file is there an indication that Progressive advised Mr. or Mrs. Pyles, collectively or individually, prior to suit being filed, of the likely jury verdicts pertaining to each individual claim, nor what they could do to avoid entry of an excess judgment. Nowhere in the file is it demonstrated that any efforts were made to minimize the amount of any excess exposure by any attempt to settle some of the claims or even the claim or claims that would provide the most significant risk to Mr. and/or Mrs. Pyles. Prior to suit there was no offer of the policy limits to the Aldana family members nor was any advice given to Mr. and Mrs. Pyles about the probable result of any claim brought by Mr. Ang. There is no indication in the file that Progressive ever advised Mr. and Mrs. Pyles of what they might do to avoid an excess judgment and that Progressive recognized it would likely occur unless it obtained a release on behalf of its insured.

The failure of Progressive to resolve the matter on behalf of the Pyles with the members of the Aldana family directly and in natural and continuing sequence produced, or contributed substantially, to producing a damage award ultimately resulting in a final judgment in excess of fifty million dollars against Mr. Pyle, which, but for the conduct in failing to offer the policy limits to Ms. Aldana and her family members, would not have occurred. I reserve the right to supplement this opinion upon being furnished any additional information or discovery that has not yet been completed.

**E.**     **Basis and Reasons for Opinion**

In Florida, in handling the defense of claims against its insured, a liability insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. *Harvey vs. Geico General Insurance Company*, 259 So. 3d 1, 6 (Fla. 2018); *Boston Old Colony Insurance Company vs. Gutierrez*, 386 So. 2d 783 (Fla. 1980). As explained by the Court, the good faith duty "...obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so. Because the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured, negligence is relevant to the question of good faith."

The Florida Supreme Court has also stated that this duty is a fiduciary duty, one in which the insurer must act in the best interest of the insured. *Berges vs. Infinity Insurance Company*, 896 So. 2d 665, 677 (Fla. 2004). The Supreme Court recently emphasized that the obligations set forth

in *Boston Old Colony* are not merely a checklist. An insurer is not absolved of liability simply because it advises its insured of settlement opportunities, the probable outcome of the litigation and the possibility of an excess judgment. Rather, the critical inquiry, in a bad faith action, is whether the insurer acted diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment.

Florida law also recognizes that in a case where liability is clear and the injuries so serious that a judgment in excess of the policy limits is likely, an insurer has an affirmative duty to initiate settlement negotiations. *Harvey vs. Geico General Insurance Company*, 259 So. 3d 1, 7 (Fla. 2018) citing, *Powell vs. Prudential Property & Casualty Insurance Company*, 584 So. 2d 12, 14 (Fla. 3d DCA 1991). The Court noted that in such a case, where the financial exposure to the insured is a ticking financial time bomb, and suit can be filed at any time, any delay in making an offer under the circumstances, even where there was no assurance that the claim could be settled could be viewed by fact finder as evidence of bad faith. Citing *Goheagan vs. American Vehicle Insurance Company*, 107 So. 3d 433, 439, (Fla. 4th DCA 2012).

These duties are applicable to situations where there are multiple claimants who are injured as a result of a single event. In *Farinas vs. Florida Farm Bureau General Insurance Company*, 850 So. 2d 555 (Fla. 4th DCA 2003), review denied, *Florida Farm Bureau General Insurance Company vs. Farinas*, 871 So. 2d 872 (Fla. 2004), the Court held that the liability insurer was required by *Boston Old Colony* to fully investigate all the claims at hand to determine how to best limit the insured's liability. Additionally, the liability insurer should seek to settle as many claims as possible within the policy limits. In other words, a liability insurer when faced with the prospect of having multiple competing claims must fully investigate all of the claims arising from the multiple claim accident, to keep the insured informed of the claims resolution process, and to

minimize the magnitude of possible excess judgments against the insured by reasoned claims settlement.

In this case, it does not appear that Progressive satisfied its obligations as referenced in *Harvey*, *Boston Old Colony* and *Farinas* in multiple ways. Nowhere does the claim file reflect that deliberative analysis of the multiple injuries and claims of the various Aldana family members, based upon the available facts to determine a probable range of verdicts based upon all of the liability factors and damages. At no time prior to January of 2016 was there any evidence of any consideration to offer those persons most seriously injured in the accident, Ms. Aldana and her family members, the policy limit, nor does the file reflect any type of deliberative analysis to determine the probable outcome of any claim brought by Mr. Ang or to provide the Pyles with the option of leaving themselves exposed on his claim while attempting to settle the claims of Ms. Aldana and her children. The claims file does not reflect the development or articulation of any strategy to determine how best to limit the insured's liability other than to continue making an offer of its policy limits in which those injured by Mr. Pyles conduct would be forced to decide who should receive what for their respective injuries.

Likewise, the claims file does not reflect any type of advice provided by Progressive to its insureds about what they may do to avoid an excess judgment. Progressive knew that this case presented a ticking financial time bomb in which suit could be filed at any time. Progressive had an obligation to diligently pursue a reasonable claim strategy that would minimize the exposure to its insureds. Rather than diligently pursuing such a strategy, it continued to make a blanket offer to Ms. Aldana and her family members and Mr. Ang whose claim Progressive viewed to be insignificant when compared to each of the individual potential claims to be made by Ms. Aldana and her family members. As such, it is my opinion that Progressive did not satisfy its obligations

of carefulness, prudence and due diligence with due regard for its insureds' interest in the handling of these claims.

Dated this 15th day of February, 2019.

_____
George A. Vaka, Esquire

# EXHIBIT A


LAW GROUP

# GEORGE A. VAKA
VAKA LAW GROUP, P.L.
TRIAL & APPELLATE ATTORNEYS

VAKA MEDIATION
FLORIDA SUPREME COURT CERTIFIED CIRCUIT AND
APPELLATE MEDIATOR, FEDERAL MEDIATOR

George A. Vaka and Vaka Law Group, P.L. are both AV-Preeminent rated by Martindale-Hubbell and Mr. Vaka has individually held that rating continuously since 1993. Mr. Vaka has been selected by his peers for thirteen consecutive years as one of the "Best Lawyers in America" ® in appellate law and insurance law and has been named "Lawyer of the Year" in insurance law (Tampa, Florida) in 2014, 2017 and 2019. Mr. Vaka is also a Florida Supreme Court Circuit and Appellate Certified Mediator and has been appointed to act as a Federal Mediator.

Since its inception, Vaka Law Group has earned the honor of being recognized as one of the "Best Law Firms in America" by *U.S. and World News Reports.*

Member of National Trial Lawyers Top 100 Trial Lawyers
Board Certified by Florida Bar as a specialist in Appellate Practice since 1994
Fellow, American College of Coverage and Extra-contractual Counsel
Recognized as one of Florida's "Legal Elite" by Florida Trend Magazine
Honored in "Best Lawyers in America" in Insurance and Appellate Practices
Member "Leading American Attorneys"
Named as a "Florida Super Lawyer" 2007, 2009-2018
Recognized as one of the Best Lawyers in Tampa Bay by Tampa Bay Metro Magazine
Recognized "Best Legal Eagle" in the state by Florida Monthly Magazine
Recognized as one of the "Best Lawyers" by Corporate Counsel Magazine and National Law Journal

## EXPERIENCE

Member:       Vaka Law Group, P.L. 2009-Present
Member:       Vaka, Larson & Johnson, P.L. 1999-2009
Shareholder:  Fowler, White, Gillen Boggs, Villareal & Banker, P.A. 1988-1999
              *Supervising Partner of the Appellate and Insurance Coverage Litigation Groups
Associate Attorney: Fowler, White, Gillen Boggs, Villareal & Banker, P.A. 1983-1988

## EDUCATION

Rutgers University                University of Florida
Cook College                      College of Law
New Brunswick, New Jersey         Gainesville, Florida
B.A. – 1979                       J.D. - 1983
                                  Board Member
                                  University of Florida Law Review

1 | George Vak
a

One Harbour Place, 777 South Harbour Island Boulevard, Suite 300, Tampa, Florida 33602
t 813.549.1799    f 813.549.1790    vakalaw.com

15

# SPEAKING ENGAGEMENTS

Mr. Vaka has spoken frequently throughout Florida, the United States and U.S. Territories on topics related to tort and insurance matters, as well as, successful appellate practice. Demonstrative examples of such speaking engagements include:

Hillsborough County Bar Association Bench/Bar Conference "Preservation of Error for Appeal" (October 2012)

Welcome to Law School – University of Florida College of Law (September 2008)

The Basics of Coverage – Florida Liability Claims Conference (June 2005)

The Care and Feeding of Experts in Your Insurance Case: Finding and Retaining Expert Witnesses, and Presenting Their Testimony, The American Bar Association, Section of Litigation – Tucson, Arizona (March 2005)

Annual Update Evidence and Civil Procedure – Academy of Florida Trial Lawyers Annual Convention (June 2004)

"Good Hands? Good Neighbors? Good Grief!" – Confessions of a Born-Again Bad Faith Lawyer – Academy of Florida Trial Lawyers Annual Convention (June 2003)

"Appealable Orders and Extraordinary Writs" – Academy of Florida Trial Lawyers Workhorse Seminar (March 2003)

Faculty Member, First through Fourth – Annual Program on Successful Appellate Practice presented by Stetson College of Law and Appellate Practice and Advocacy Section of the Florida Bar (1998-2001)

"Image is Everything – Winning Your Case in the Court of Public Opinion" – Earth, Wind, Fire and Water: Cutting Edge Issues in Property Insurance Claims Following a Natural or Man-Made Disaster presented by American Bar Association – St. Thomas, USVI (April 2001)

# BAR MEMBERSHIPS AND PRACTICE

- **Florida Justice Association (formerly Academy of Florida Trial Lawyers)**
  Board of Directors 2003-2006
  Chair Appellate Section 2003-2006
  Chair-Elect Appellate Section 2002-2003
  Amicus Curiae Committee 1999-Present

- **American Association for Justice (formerly Association of Trial Lawyers of America)**
  Insurance Litigation Section

- **American Bar Association**
  Litigation Section
  Tort and Insurance Practice Section
  Insurance Coverage Litigation Committee

- **The Florida Bar**
  Appellate Practice and Advocacy Section Charter Member
  Executive Counsel 1994-1997, 1997-2000
  Chairman Legislative Committee 1997-2000
  Vice-Chairman Membership Committee 1997-1998
  Trial Lawyers Section

- **Hillsborough County Bar Association**
  Appellate Advocacy Committee
  Insurance Coverage Committee

- **Defense Research Institute 1991-1999**
  1998 Exceptional Performance Citation for having supported and improving the standards and education of the defense bar and for having contributed to the improvement of the administration of justice in the public interest.

  President's Blue Ribbon Committee on Insurance Company Practices

- **Florida Defense Lawyers Association 1984-1999**
  President 1997-1998
  President-Elect 1996-1997
  Secretary-Treasurer 1995-1996
  Board of Directors 1992-1995
  Ex-officio 1998-1999
  Editorial Board 1989-1996
  *Trial Advocate Quarterly*
  Amicus Curiae Committee 1991-1997
  1994 Convention Chairperson
  Best Amicus Brief 1996
  President's Award for Outstanding Service 1996 & 1999
  Florida Liability Claims Institute 1999 Chairperson

- **International Association of Defense Counsel 1991-1999**

- **Association Internationale de Droit des Assurance   (International Association for Insurance Law)**

- **University of Florida College of Law**

3 | G e o r g e   V a k
a

One Harbour Place, 777 South Harbour Island Boulevard, Suite 300, Tampa, Florida 33602
t 813.549.1799   f 813.549.1790   vakalaw.com

17

Law Center Association Board of Trustees 2006-Present [Emeritus May 2012]
University of Florida College of Law Alumni Council Member 1986-2006
President 2004-2005

- **Board Certified by Florida Bar as a specialist in Appellate Practice 1994-Present**

# ADMITTED TO PRACTICE

- All Florida state courts
- United States District Court for Middle District of Florida
- United States Circuit Court of Appeals, Tenth Circuit
- United States Circuit Court of Appeals, Eleventh Circuit
- United States Supreme Court

# AUTHOR

Mr. Vaka has authored numerous articles and acted as a contributing author in several books on topics ranging from insurance to successful appellate practices.

*The Times are Changing and We Need to Change with Them* – Journal, Academy of Florida Trial Lawyers (January 2004)

*Some Tips on Avoiding Pitfalls and Potholes to the Infrequent Traveler of the Appellate Highway* – Journal, Academy of Florida Trial Lawyers (November 2003)

*Sometimes Being An Appellate "Nerd" Pays Off* – Journal, Academy of Florida Trial Lawyers (February 2003)

*North Florida Women's Health & Counseling Services, Inc.* v. State: *A Blueprint to Help Challenge the Constitutionality of the 2003 Medical Malpractice Reforms?* – Journal, Academy of Florida Trial Lawyers (August 2003)

*Preserving the Denial of a Challenge for Cause for Appellate Review* – Journal, Academy of Florida Trial Lawyers (February 2003)

*Multiple Liability Insurance Policies* – Florida Automobile Insurance Law, 4th Ed. (Fla. Bar Publisher) (Summer 1998)

*CGL Policy is Not a Panacea for Employee Claims* – The National Law Journal (August 26, 1996)

*Non-Disclosure of the Underinsured Motorist Carrier at Trial: Jury Deception or Protection of the Jury Process?* – Trial Advocate Quarterly, Vol. 15, No. 1 (Winter 1996)

*The First Party Insurance Bad Faith Claim: Basics and New Developments, Part II* – Florida Bar Journal, Vol. LXIX, No. 7 (July 1995)

*Multiple Liability Insurance Policies, Chapter 6* – Florida Automobile Insurance Law, 3rd Ed. (Fla. Bar Publisher) (June 1995)

*Multiple Liability Insurance Policies, Chapter 6* – Florida Automobile Insurance Law, 2nd Ed. (Fla. Bar Publisher) (July 1993)

*The New Uninsured Motorist Statute: Implications and Possible Constitutional Challenges* – Trial Advocate Quarterly Vol. 11, No. 4 (October 1992)

*Multiple Liability Insurance Policies, Chapter 6* – Florida Automobile Insurance Law (Fla. Bar Publisher) (1991)
*Bad Faith Actions in Florida, Defendant's Perspective* – Florida Insurance and Tort Law Update, Professional Education Systems, Inc. (1991)

*Bad Faith in the 90's* – Trial Advocate Quarterly, Vol. 9, No. 4 Symposium Editor (October 1990)

Case Comment, *Shelby Mutual Insurance Company of Shelby, Ohio v. Mary Lou Smith* – Trial Advocate Quarterly, Vol. 9, No. 1 (January 1990)

*Bad Faith Actions in Florida, Defendant's Perspective* – Florida Insurance and Tort Law Update, Professional Education Systems, Inc. (1990)

*Possibility Plus Foreseeability Equals Liability: It's Time to Rethink the Proximate Cause Equation in Florida* – Trial Advocate Quarterly, Vol. 6, No. 1 (January 1987)

*Child Molestation: Intentional Act, Unintentional Injury?* – The Advocate, Vol. XI, No. 3, Co-Author (June 1985)

Alpert, *Products Liability, The Law in Florida* – 1982 Supplement, Co-Author (1982)
Alpert, *Florida Settlements and Release* – Contributing Author (1982)

*Police Records Bill Clouds Status of Meetings* – Florida Freedom of Information Clearing House Newsletter, Vol. 6, No. 9, Contributing Author (November 1982)

5 | G e o r g e  V a k
a

One Harbour Place, 777 South Harbour Island Boulevard, Suite 300, Tampa, Florida 33602
t 813.549.1799    f 813.549.1790    vakalaw.com
19

# EXHIBIT B

# GEORGE A. VAKA
## VAKA LAW GROUP, P.L.
### TRIAL & APPELLATE ATTORNEYS

## CASES WITHIN THE PREVIOUS FOUR (4) YEARS WHICH I HAVE TESTIFIED AS AN EXPERT AT TRIAL OR AT DEPOSITION

1. Pulte Home Corporation vs. Alpha Insulation & Water Proofing Company, Inc., et al.
Case Number 2014-CA-4911
In the Circuit Court of the Fourth Judicial Circuit, in and for Duval County, Florida
Deposition: September 26, 2017

2. Rahdert, Steele & Reynolds, P.A., vs. Nationwide Mutual Fire Insurance Company
Case Number: 2011-007651-CI-008
In the Circuit Court of the Sixth Judicial Circuit of the State of Florida, in and for Pinellas County, Florida
Depositions (2) and trial testimony (2) 2014 and 2015

3. Florida Farm Bureau General Insurance Company vs. American Strategic Insurance Corporation
Case Number: 2011-CA-000714
In the Circuit Court of the Tenth Judicial Circuit in and for Polk County, Florida
Deposition: June 28, 2016

4. Athina Dever, as Personal Representative of the Estate of John Kent Dever vs. Charles Martin White, Monique White, Ashley Nicole White and Geico General Insurance Company
Case Number: 2011-CA-1162-08-K
In the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida
Deposition: September 6, 2017

5. Guarantee Insurance Company vs. Heffernan Insurance Brokers, Inc. a California corporation; Socius Insurance Services, Inc., a California Corporation
Case Number: 2013-CV-23881
United States District Court, Southern District of Florida
Trial Deposition: May 27, 2015

6. Heather R. Eres, individually, as Personal Representative of the Estate of Kevin D. Bryant, Deceased, and as assignee of Eli Villareal a/k/a Eli Villareal Alvarez vs. Progressive American Insurance Company
Case Number: 8:17-cv-2354-EAK-MAP
United States District Court, Middle District of Florida, Tampa Division
Deposition: October 3, 2018