YOLANDA ALDANA and LEYVIER HERRERA,
her husband, YOLANDA ALDANA as mother and
natural guardian of KEVIN MARTINEZ, a minor,
as mother and natural guardian of ANTHONY
MARTINEZ, a minor, as mother and natural
guardian of ALEJANDRO ALDANA, a minor,
and as mother and natural guardian of KENNETH
HERRERA, a minor,

     *Plaintiffs*,

vs.

PROGRESSIVE AMERICAN INSURANCE
COMPANY,

     *Defendant*.

_____/

## RESPONSE IN OPPOSITION TO
## PROGRESSIVE'S MOTION FOR SUMMARY JUDGMENT

Progressive American Insurance Company's Motion for Summary Judgment [D.E. 35] must be denied because Progressive's failure to exercise reasonable care and diligence is a disputed issue of fact for determination by the jury. The duty to settle can be "a ticking financial time bomb. Suit could be filed at any time. Any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith." *Goheagan v. Am. Vehicle Ins. Co.*, 107 So. 3d 433, 439 (Fla. 4th DCA 2012) (citing *Boston Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)*; Campbell v. Gov't Employees Ins. Co.*, 306 So. 2d 525, 530-31 (Fla.

1974))("[R]easonable diligence and ordinary care [are] material in determining bad faith. Traditionally, reasonable diligence and ordinary care are considerations of fact—not of law.").

Progressive failed to act with due regard for Mr. Pyles' interests. The full policy limits should have been paid solely to the Aldanas to settle their claims. Progressive argues that factors outside of its control are to blame for its failure to settle the Aldanas' claims. Within days of the Accident Progressive knew that Aubrey Heffler was uninjured and that Jaron Ang's minor injuries were covered by his workers compensation insurance. Progressive took a rigid, formulaic approach to the claims by continuing to include both Ms. Heffler and Mr. Ang in its global settlement offers, instructing the seven claimants to apportion the limits among themselves before any checks could be issued. Had Progressive tendered the entirety of the limits to the Aldanas before the August 2014 suit was filed, the claim would have settled. And if Progressive asked Mr. Pyles if he wanted to use his policy limits to settle just the Aldanas' claims, he would have said yes. Progressive failed to confer with Mr. Pyles about his settlement options until December 15, 2015, two years after the accident. At that point it was too late. Progressive's actions and refusals to act left its insured exposed to a catastrophic judgment.

In a multiple claimant situation, the question of whether an insurer has met its good faith duty and whether its claims settlement strategy was reasonable is reserved for the jury. *Farinas v. Fla. Farm Bureau Gen. Ins. Co.*, 850 So. 2d 555, 561 (Fla. 4th DCA 2003); *GEICO Indem. Co. v. Boike*, 06-80219-CIV, 2006 WL 8435402, at *5-6 (S.D. Fla. Oct. 16, 2006), *clarified on denial of reconsideration*, 06-80219-CIV, 2006 WL 8435399 (S.D. Fla. Nov. 9, 2006). There are disputed issues of fact to be tried by a jury, as evidenced by the 54 exhibits attached by Progressive to its motion. Progressive's motion for summary judgment should be denied.

**RESPONSE TO PROGRESSIVE'S STATEMENT OF MATERIAL FACTS**[1]

The Aldanas do not dispute the circumstances of the accident, nor do they dispute the general timeline of the claims handling.[2] The Aldanas dispute certain assertions Progressive argues are "facts," including Progressive's paraphrasing of certain correspondence, and misleading subheadings.

The Aldanas object to Progressive's characterization of Michael Sawyer's role as the Pyles "personal counsel." [D.E. 35] at 4, 5, 6. Mr. Sawyer represented Nathan Pyles for his criminal case arising from the accident. Robert W. Batsel was Pyles' personal counsel for civil matters related to the accident.

Progressive's phrasing that it "encouraged 'the seven claimants come to an agreement regarding the apportionment'" is inaccurate. [D.E. 35] at 6. The letter sent by Progressive did not encourage but rather instructed the seven claimants to apportion the limits: "We ask that the seven claimants come to an agreement regarding the apportionment of our insureds $500,000 policy limit. Once I have been advised of the agreed apportionment, I will immediately issue the settlement drafts and proposed releases." [D.E. 35-10].

The Aldanas object to Progressive's assertion that it "confirmed personal counsel had advised the insureds about the injury information and explained the potential for excess judgments to them." [D.E. 35] at 7. Progressive did not advise the Pyles or their personal counsel, Mr. Batsel, of the magnitude of the Aldanas' injuries, nor did it advise them that Mr. Ang had soft tissue injuries that were being compensated through his worker's compensation

---

[1] Many of Progressive's statement are supported by citations to its claims notes, which are attached as Exhibit 2 to Progressive's motion. [D.E. 35-2]. The Aldanas object to the admission of the claims notes in their entirety and reserve the right to object to claims notes entries as hearsay at trial.

[2] The Aldanas object to and dispute all of Progressive's summary headings.

insurance. Affidavit of Nathan Pyles, attached as Ex. A at ¶16; Affidavit of Robert W. Batsel, attached as Ex. B at ¶5.

Progressive's summary of J. Ross Davis' December 30, 2013 letter is incomplete and misleading. [D.E. 6] at 7-8. The letter speaks for itself. [D.E. 35-13]. The Aldanas also object to Progressive's phrasing and summary of the January 6, 2014 email from Cole Scott & Kissane (CSK). [D.E. 35] at 8. The email does not indicate that Mr. J Ross Davis "refused" to attend the global settlement conference. [D.E. 35-17].

The Aldanas object to Progressive's summary of Mr. J. Davis's January 7, 2014 letter. [D.E. 35] at 8. Progressive's summary of the letter excludes large portions of the letter, including that Mr. J. Davis was not notified of the global settlement conference until January 6, 2014, the day before the mediation was scheduled to take place. [D.E. 35-19]. Progressive's summary of CSK's January 9, 2014 letter is also misleading. [D.E. 35] at 9. The letter recommended that Progressive "evaluate the claims and make offers without a global mediation." Progressive's summary added in the phrase "based on the limited information." [D.E. 35-23].

The Aldanas object to Progressive's summary of its January 16, 2014 letter. [D.E. 35] at 9. The letter states that Mr. J. Davis indicated he was "continuing [his] investigation into this accident and attempting to obtain records and confirmation on the extent of [his] client's injuries" in response to Progressive's request for medical information. [D.E. 35-24].

The Aldanas object to Progressive's summary of its January 22, 2014 letter to counsel for Mr. Ang. [D.E. 35] at 9. The letter indicated that Progressive had "been informed that he does have worker's compensation for this accident." [D.E. 35-25].

The Aldanas object to Progressive's summary of its February 13, 2014 letter to Mr. J. Davis and Mr. Laird. [D.E. 35] at 10. The letter indicates that Progressive had spoken to both Mr. J. Davis and Mr. Laird, both of whom had indicated that they were not ready to attend a global settlement conference. [D.E. 35-26].

The Aldanas object to Progressive's statement that it paid the Aldanas March 2014 personal property claim "without argument." This is not a statement of fact. [D.E. 35] at 11.

The Aldanas object to Progressive's summary of Mr. J. Davis's March 19, 2013 letter as not providing claim specific information. Mr. J. Davis's letter provided an update on the total medical bills. [D.E. 35-33].

The Aldanas object to Progressive's summary of its April 21, 2014 letter, May 15, 2014 letter, June 18, 2014 letter, Mr. Laird's July 3, 2014 letter, Progressive's July 17, 2014 letter, Mr. Piccin's August 12, 2014 letter, and Progressive's August 14, 2014 letter and September 11, 2014 letters. [D.E. 35] at 12, 13, 14. The letters speaks for themselves. [D.E. 35-40]; [D.E. 35-42]; [D.E. 35-43]. [D.E. 35-44]; [D.E. 35-45]; [D.E. 35-46]; [D.E. 35-47]; [D.E. 35-48]; [D.E. 35-50]. The Aldanas also dispute that on July 21, 2014 Progressive provided Mr. Batsel with the July 3, 2014 letter from Mr. Laird inviting Progressive to make a settlement offer to Mr. Ang. [D.E. 35] at 13. On July 21, 2014 Progressive provided Mr. Batsel its July 17, 2014 letter rejecting the settlement opportunity presented by Mr. Ang. [D.E. 35-46].

The Aldanas do not dispute that suit was filed but object to Progressive's phrase "Unbeknownst to Progressive," as it is not a statement of fact.

## LAW AND ARGUMENT

The Florida Supreme Court has consistently held "the question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the

5

circumstances' standard. It is for the jury to decide whether the insurer failed to 'act in good faith with due regard for the interests of the insured.'" *Harvey v. GEICO Gen. Ins. Co.,* 259 So. 3d 1, 7 (Fla. 2018) (quoting *Boston Old Colony,* 386 So. 2d at 785)). Summary judgment in a failure to settle action is an unusual occurrence because prudence and diligence are factual inquiries reserved for the jury. *Id.* Judge Corrigan of the Middle District recently held that after *Harvey*, the court is compelled to deny an insurer's motions for summary judgment and send the case to trial. *Wiggins v. Gov't Employees Ins. Co.*, No. 3:16-cv-1142-J-32MCR, 2019 WL 338945, *1 (M.D. Fla. Jan 28, 2019). Reasonable diligence and ordinary care are both "material in determining bad faith" and "considerations of fact – not of law." *Campbell*, 306 So. 2d at 530-31 (Fla. 1974).

Progressive attempts to avoid the clear holding in *Harvey* and long-standing Florida Supreme Court jurisprudence by arguing that the federal summary judgment standard is lower than that of Florida state courts. But "'Florida's summary judgment standard is very similar to that of Rule 56.' To ensure that 'a case filed in federal court will be handled in the same way as it would be in the courts of the state where the federal court sits,' and to discourage forum shopping, we aim to reach the same result that the Florida courts would reach based on the same facts." *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. Mar. 16, 2018) (quoting *Carlson v. FedEx Ground Package System, Inc.,* 787 F.3d 1313, 1326 (11th Cir. 2015)).

"In most cases . . . the inherently flexible nature of the 'totality of the circumstances' standard renders a bad-faith claim unsuitable for summary disposition." *Moore v GEICO Gen. Ins. Co.,* 633 F. App'x 924, 928 (11th Cir. Feb. 19, 2016) (citations omitted). "Each case is determined on its own facts and ordinarily '[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury.'" *Berges,* 896 So. 2d at 680 (quoting *Boston*

*Old Colony,* 386 So. 2d at 785) (alteration in original).

**I.     Disputed Issues of Fact Preclude Summary Judgment Regarding Whether Progressive Could and Should have Settled the Aldanas' Claims**

Progressive did not exercise reasoned claims judgment where it insisted on a global settlement conference instead of addressing the unique circumstances of this claim and tendering the full bodily injury limits solely to the Aldanas. Within days of the accident Progressive's insured advised Progressive that Aubrey Heffler was not injured and would not be presenting a claim. Despite receiving confirmation of this fact from three different sources (Heffler's mother, Alisha Pyles; Heffler's step-father, Nathan Pyles; and the Pyles personal attorney, Robert Batsel), Progressive continued to include her claim in its demand for a global settlement conference. Progressive also knew that Jaron Ang had only minor soft-tissue injuries that were being compensated by worker's compensation insurance.

The Aldanas sustained catastrophic injuries that individually would each exceed the policy limits. Progressive hired CSK to assist in resolving the claims. One month after the accident, CSK recognized the risk to Mr. Pyles and recommended on January 14, 2014 that Progressive abandon its persistent formulaic approach and evaluate the individual claims to settle without a global mediation. Progressive declined or ignored this advice and continued to insist on the claimants adjusting and apportioning the limits themselves.

Progressive also failed to advise or seek input from its insured, who would have told Progressive to use the entirety of the policy limits to settle the Aldanas' claims. Pyles Aff. (Ex. A) at ¶17; Batsel Aff. (Ex. B) at ¶7.[3] Had Progressive handled this claim in good faith, evaluated and acknowledged the disproportionate risk to Mr. Pyles, and tendered the full limits to the

---

[3] Progressive chose not to depose its insured or his personal counsel. Their affidavits are the only record evidence of what Progressive did and did not communicate to them.

Aldanas during the nine months preceding the underlying lawsuit, they would have accepted and settled their claims. Affidavit of Yolanda Aldana, attached as Ex. C at ¶5; Affidavit of Leyvier Herrera, attached as Ex. D at ¶5; Feb. 18, 2016 letter from J. Piccin to M. Merrill, attached as Ex. E; Feb. 19, 2016 letter from E. Gonzalez to M. Merrill, attached as Ex. F; J. Davis Dep. [D.E. 36] at 41:16-19; 52:2-8 ("The only thing I wanted [Progressive] to do was pay the policy limits.").

Progressive had a fiduciary duty to settle the Aldanas' claims against its insured, Nathan Pyles, for his $500,000 policy limits in order to protect him from an excess judgment. The Florida Supreme Court explained:

> when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured. This good faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same. The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.

*Macola v. Gov't Employees Ins. Co.*, 953 So. 2d 451, 455 (Fla. 2006) (quoting *Boston Old Colony,* 386 So. 2d at 785). Where there are multiple claims, the insurer must investigate all the claims to determine how to best limit the insured's liability and then settle as many claims as possible and as practicable, using the policy limits to protect the insured to the greatest extent possible. *Farinas*, 850 So. 2d at 560.

Progressive asks this Court to speculate as to the Aldanas' subjective intentions and argues that there was no reasonable opportunity to settle the Aldanas' claims. But this Court does not need to guess, because the record evidence is consistent: had the bodily injury limits been

8

offered solely to the Aldanas before suit was filed against the insured, they would have settled their claims. Aldana Aff. (Ex. C) at ¶5; Herrera Aff. (Ex. D) at ¶5;[4] J. Davis Dep. [D.E. 36] at 50:14-19; Feb. 19, 2016; E. Gonzalez letter (Ex. F); Feb. 18, 2016 Piccin letter (Ex. E). This Court must accept the facts in the light most favorable to the Aldanas, the non-moving party. *Schultz v. Gov't Employee Ins. Co.*, 2016 WL 10519003 (N.D. Fla. 2016) (*citing Galvez v. Bruce*, 552 F.3d 1238, 1239 (11th Cir. 2008). All reasonable doubts about the facts and the possibility of settlement must be resolved in favor of the non-movant. *Id.*

### A. Progressive Should have Paid the Policy Limits and Settled with the Aldanas in the Nine Months Preceding the Underlying Lawsuit

Progressive "determined by December 18, 2013 that the severity of the collective bodily injury liability claims [of the Aldanas] warranted an offer of its combined bodily injury policy limits." Progressive Ans. and Aff. Def. [D.E. 7] at ¶21. But rather than tendering the entirety of the policy limits to the Aldanas, it insisted on a formulaic global settlement conference. Mr. Pyles "told Progressive from the beginning that the only people [he] thought were hurt in the collision were the Aldanas." Pyles Aff. (Ex. A) at ¶13. "If Progressive had told [Mr. Pyles[ that [he] could exclude Mr. Ang's claim in order for it to offer [his] full $500,000.00 policy limits to settle the Aldanas' claims, [he] would have told them to do so. The Aldanas were the only ones hurt in the collision." Pyles Aff. (Ex. A) at ¶17. "An offer of [the $500,000 policy] limit would likely have been accepted had it been offered to . . . the Aldana and Herrera family, before [they] hired Ervin Gonzalez and his law firm." Feb. 18, 2016 Piccin letter (Ex. E). "It is a shame that the $500,000.00 in coverage was not offered exclusively to the Plaintiffs …. They clearly have the worst injuries of anyone involved and they would have likely accepted the

---

[4] Progressive deposed Mrs. Aldana and Mr. Herrera but never asked either of them whether they would have accepted the policy's limits and when the settlement opportunity expired.

policy limits had they been offered . . . ." Feb. 19, 2016 E. Gonzalez letter (Ex. F); *See also* Aldana Aff. (Ex. C) at ¶5; Herrera Aff. (Ex. D) at ¶5; J. Davis Dep. [D.E. 36] at 41:16-19; 50:14-19; 52:2-8.

Progressive's mishandling of the Aldanas claims was clear from the outset. In the days following the December 6, 2013 accident, Alisha Pyles advised Progressive that her daughter, Aubrey Heffler, was not injured in the accident. Pyles Aff. (Ex. A) at ¶8, 10, 11; Claim Note [D.E. 35-2] at CFS (13) 3. Progressive was immediately aware that the Aldanas had suffered catastrophic injuries. On December 9, 2013, Ms. Aldana informed Progressive that she had a broken rib and liver damage. Claim Note [D.E. 35-2] at CFS (13) 3. All of the Aldanas were taken to the hospital and that the youngest, Kenneth Herrera, was not breathing at the scene. *Id.* at CFS (13) 7. Progressive's file noted that Ms. Aldana had broken ribs, Kevin had a broken jaw and two broken legs, Alejandro had leg and face injuries, Anthony had broken hips and Kenneth was not breathing at the scene and had broken legs. *Id.*

By December 12, 2013, Progressive knew that Ms. Aldana was removed from vehicle with jaws of life; that Kevin (age 12) had both femurs fractured, a facial fracture, and two teeth missing; that Kenneth (age 2) had fractured a femur and had brain swelling; and that Anthony (age 8) fractured his hip and had surgery to move intestines to allow for bowel movement. J. Richardson Dep. [D.E. 37] at 43:6-14; [D.E. 35-2] at CFS (13) 16. By December 16, 2013, Progressive confirmed that Mr. Ang was in the course and scope of his employment during the accident. J. Richardson Dep. [D.E. 37] at 45:11-15. And on December 17, 2013, Mr. Ang advised Progressive that his workers' compensation insurance was taking care of his injuries. [D.E. 35-2] at CFS (13) 24. On December 16, 2013, Ms. Wallace spoke to the Pyles' criminal attorney, Mr. Sawyer, who reiterated that Miss Heffler was not injured. [D.E. 35] at 5.

Progressive did not ask if Miss Heffler could be excluded from settlement offers or request that her parents execute a statement of no claim.

On December 18, 2013, Progressive assigned arbitrary valuations to the seven claims: Yolanda, $50,000; Kevin, $125,000; Anthony, $125,000; Alejandro, $70,000; Kenneth, $125,000; Mr. Ang, $2,500; and Ms. Heffler, $2,500. [D.E. 35-2] at CFS (13) 28. This valuation did not reflect the facts known to Progressive at the time, but rather was assigned to equal the $500,000 policy limits. J. Richardson Dep. [D.E. 37] at 61:5-10 ("they were just rough estimates . . . They were not indicative of the actual value of the claims."). The inaccuracy of the valuation was evident in Progressive's claim file, which reflected that Miss Heffler had suffered no injuries and the youngest Aldana child's injuries far exceeded $500,000. After this arbitrary valuation, Ms. Wallace asked for permission to globally tender the $500,000 policy limits between the seven claimants. *Id.* On December 18, 2013, Progressive sent a letter to the seven claimants globally tendering the policy limits to all claimants, instructing the claimants that they must "come to an agreement regarding the apportionment of our insureds' $500,000 policy limits. Once I have been advised of the agreed apportionment, I will immediately issue the settlement drafts and proposed releases." [D.E. 35-10]. The next day, the Pyles' personal counsel, Robert Batsel, again informed Progressive that it could exclude Miss Heffler from all settlement offers. [D.E. 35-2] at CFS (13) 26.

On December 30, 2013, Mr. Ang's workers compensation carrier confirmed that it was covering his injuries. [D.E. 35-14]. Progressive was also told that Mr. Ang's injuries were likely only soft tissue. [D.E. 35-2] at CFS (13) 40. On the same day, the Aldanas' attorney, J. s Davis, wrote to Progressive indicating that the Aldanas' injuries exceeded Progressive's $500,000 policy limits. [D.E. 35-13]. Mr. J. Davis informed Progressive that Kenneth, the two year old,

sustained brain damage and would likely never walk again. He declined Progressive's demand that the claimants apportion the $500,000 between themselves. Cole, Scott & Kissane (CSK), the law firm hired by Progressive to assist in resolving the claim, also sent out a letter on December 30, 2013, requesting a global settlement conference between the seven claimants, to occur on January 7, 2013. [D.E. 35-15]. The notice was inexplicably sent to the Aldanas directly and enclosed a "No Claim Statement," despite knowledge that all Aldanas were catastrophically injured. *Id.* Following receipt of the December 30 letter, the Pyles (again) reiterated to Progressive that Miss Heffler was not injured and should not be included in the settlement offers. [D.E. 35-2] at CFS (13) 43; Pyles Aff. (Ex. A) at ¶10, 11.

On January 14, 2014, CSK wrote a letter to Progressive indicating that all parties wished to delay the global settlement conference. [D.E. 35-23]. CSK recommended that Progressive evaluate the claims and make offers without a global mediation, and that Miss Heffler be excluded from the claims settlement process. *Id.* On January 16, 2014, Miss Heffler's father, Darrell Heffler, confirmed the information that Progressive had repeatedly received: that Miss Heffler was not injured in the accident and would not present a claim. [D.E. 35-2] at CFS (13) 52. Progressive waited another month before excluding Miss Heffler from its February 13, 2014 request for a global settlement conference.[5] [D.E. 35-26]. The February 13, 2014 letter was substantially the same as the December 18, 2013 letter, insisting on a global settlement conference and self-apportionment of funds. *Id.* Progressive ignored CSK's recommendation that it evaluate the claims individually. Progressive's claims attorney, Todd Parnell, approved the second global settlement letter. Deposition Excerpts of Todd Parnell, attached as Ex. G at 19:11-18.

---

[5] Progressive failed to advise the Aldanas' attorney and Ang's attorney that Miss Heffler could be excluded from the apportionment. *See* J. Richardson Dep. [D.E. 37] at 53:8-19.

Progressive continued to include Mr. Ang in its settlement offers, despite knowledge that his injuries were minor and covered by his workers compensation insurance. [D.E. 35-26, 30, 41, 42, 45]. On July 3, 2014, Mr. Ang's attorney, Brian Laird sent Progressive a letter inviting it to make a settlement offer to resolve Mr. Ang's claims. [D.E. 35-43]. There is no record of Progressive forwarding this letter to the Pyles or their personal counsel. Progressive made the decision (without consulting its insured) to respond that it would not settle with Mr. Ang without a global settlement conference. [D.E. 35-44]; Deposition Excerpts of Kathy Wallace, attached as Ex. H at 99:14-20. Progressive's only communication with the insured regarding this settlement opportunity was to forward Mr. Batsel a copy of Progressive's rejection letter. [D.E. 35-46].

In circumstances where Progressive is unable to promptly resolve all the claims against the insured, Progressive should *"work with the insured, typically, to identify which are the most significant exposures and make the effort to extinguish those."* J. Richardson Dep. [D.E. 37] at 28:7-11 (emphasis added). Progressive could and should have worked with Mr. Pyles to exclude Mr. Ang's claim and tender the entire policy limits to the Aldanas. On July 3, 2014, Progressive was presented with a clear opportunity to work with its insured to "segregate out the most serious claims" in order to protect him from an excess judgment. But Progressive continued to hide pertinent facts from its insured and unilaterally insist on a global settlement conference. It was not until two years post-loss, on December 15, 2015 that Progressive discussed with its insureds the best way to allocate the policy benefits. J. Richardson Dep. [D.E. 37] at 67:13-21; Jan. 5, 2016 letter from S. Soard to N. Pyles (MD 905), attached as Ex. I.

Progressive asserts, without any factual basis, that it had verified with Mr. Pyles' personal counsel that he had discussed the potential exposure with his client. [D.E. 35] at 6-7. The record evidence is to the contrary. Progressive did not engage in a good faith valuation of

13

the claims posed by the Aldanas, Mr. Ang, and Aubrey Heffler, instead assigning arbitrary values that conflicted with the facts known to it at the time.[6] Progressive did not disclose the magnitude of the Aldanas' injuries to Mr. Pyles or to his personal attorney, Mr. Batsel. *See* Pyles Aff. (Ex. A) at ¶6; Batsel Aff. (Ex. B) at ¶5.

Progressive failed to inform Mr. Pyles or his personal attorney that Mr. Ang had relatively minor injuries that were being compensated through his worker's compensation insurance. Pyles Aff. (Ex. A) at ¶16; Batsel Aff. (Ex. B) at ¶5. Progressive did not ask Mr. Pyles if he wanted to exclude Mr. Ang from the settlement offers or if Mr. Pyles would be willing to pay personal funds to Mr. Ang, leaving the full $500,000 to be paid to the Aldanas. Pyles Aff. (Ex. A) at ¶17; Parnell Dep. (Ex. G) at 21:22-22:13; 24:5-25:7; 26:22-28:14; 29:5-13; 29:15-30:6. And Progressive did not ask Mr. Pyles or his attorney for permission to exclude Mr. Ang from the settlement offers. Batsel Aff. (Ex. B) at ¶6. Had Progressive done so, Mr. Batsel would have immediately advised to Mr. Pyles to exclude Mr. Ang's claim and settle the Aldanas' claims for the policy limits. *Id.* Progressive continued to send the same form letter to the Aldanas and Mr. Ang for nine months, instructing the six claimants to apportion the $500,000 policy limits between them before Progressive would tender any checks. [D.E. 35-26, 30, 41, 42, 45]. It was not until December 15, 2015 that Progressive asked Mr. Pyles if it could exclude Mr. Ang and offer the full policy limits to the Aldanas. Pyles Affidvait (Ex. A) at ¶18; Jan. 5, 2016 letter (Ex. I). Mr. Pyles immediately agreed. Mr. Ang never filed suit against him. *Id.*

---

[6] Progressive assigned $125,000 to Kenneth, Anthony and Kevin's injuries, and $2,500 to Miss Heffler. At the time of these valuations, Progressive had been repeatedly informed by multiple sources that Anthony had a fractured pelvis, Kevin had two fractured femurs and facial injuries and Kenneth, a two year old, had brain swelling and a traumatic brain injury. Progressive also knew that Miss Heffler was not injured and would not be presenting a claim.

Progressive's failure to properly evaluate its insured's exposure to the claims against him resulted in a catastrophic excess judgment, for which Progressive is now liable.

### B. Progressive Violated its Good Faith Duties by Requiring the Injured Parties to Apportion the Policy Limits

Progressive impermissibly demanded that the Aldanas and their attorney "be the claims adjusters, and decide who should get what." Deposition of George Vaka, attached as Ex. J, at 25-10-14. "It's not the claimant's obligation to do that, it's the carrier's obligation. [Progressive] should have just tendered the money to these horrendously injured youngsters." J. Davis Dep. [D.E. 36] at 41:16-19. "The only thing I wanted [Progressive] to do was pay the policy limits." *Id.* at 52:2-8. It was Progressive's refusal to take a reasoned approach to resolve a catastrophic situation that resulted in the failure to settle the Aldanas' claims. Progressive failed to undertake an individual analysis of each claim and the exposure it posed to its insured nor did it advise its insured about each claims potential value. Vaka Dep. (Ex. J) at 22:24-23:13, 24:1-6; Vaka Report [D.E. 29-8] at 13.[7] Had it done so, it would have reached the obvious conclusion and resolved the Aldanas' claims using the policy limits.

It is not enough to attempt to settle on Progressive's terms. Progressive was required to do "everything reasonably possible to complete the settlement" of the Aldanas' claims, and protect its insured from an excess judgment. *Berges,* 896 So. 2d at 681. The responsibility to take all reasonable steps to reach a settlement rests with the insurer. This is because "when the insured has surrendered to the insurer all control over the handling of the claim . . . the insurer must assume a duty to exercise such control and make such decisions in good faith and with due

---

[7] Mr. Vaka has been recognized as AV-Preeminent rated by Martindale-Hubbell and has been selected as one of the "Best Lawyers in America" in appellate law and insurance law and "Lawyer of the Year" in insurance law. He is also a Florida Supreme Court Circuit and Appellate Certified Mediator and has been appointed to act as a Federal Mediator. *See* Expert Witness Report of George Vaka [D.E. 29-8].

regard for the interests of the insured." *Boston Old Colony,* 386 So. 2d at 785 (citing *Liberty Mut. Ins. Co. v. Davis,* 412 F.2d 475 (5th Cir. 1969)). Progressive did <u>not</u> do everything "reasonably possible to complete the settlement." Progressive refused to employ a reasoned claims settlement strategy or focus on the claims that posed the most exposure to its insured. It ignored CSK's advice to forgo the global settlement conference and settle claims individually. It never re-evaluated the claims values based on new information. Progressive instead chose to do send the same letter over and over, expecting a different result.

Progressive relies on its continuous global tender letters as a shield from bad faith. The Florida Supreme Court recently reiterated that "nothing in either *Boston Old Colony* or *Berges* can be read to suggest that an insurer's obligations end by tendering the policy limits. To the contrary, the insurer's duty to act in good faith 'in handling the defense of claims against its insured' continues through the duration of the claims process." *Harvey*, 259 So. 3d at 10 (citing *Boston Old Colony*, 386 So. 2d at 785). Progressive is treating the obligations in *Boston Old Colony* and *Farinas* like a checklist that will absolve it of liability. The *Harvey* Court rejected this approach: "The obligations set forth in *Boston Old Colony* are not a mere checklist. . . . Rather, the critical inquiry in a bad faith is whether the insurer diligently, and with the same haste and precision as if it were in the insured's shoes, worked on the insured's behalf to avoid an excess judgment." *Harvey,* 259 So. 3d at 7 (internal citations omitted). Despite its knowledge of the seriousness of the Aldanas' injuries and the lack of injury to Ms. Heffler and Mr. Ang, Progressive did not use $500,000 bodily injury limit to settle the Aldanas' claims.

### C.  *Progressive Relies on Inapposite Case Law*

Progressive generally cites to *Infinity Ins. Co. v. Berges*, 806 So. 2d 504, 508 (Fla. 2d DCA 2001), *Williams v. Infinity Ins. Co.*, 745 So. 2d 573, 575 (Fla. 5th DCA 1999), *Houston v.*

*Progressive Am. Ins. Co.*, 2014 WL 12576820 (M.D. Fla. 2014), *Valle v. State Farm*, 2010 WL 5475608 (S.D. Fla 2010), *Mesa v. Clarendon*, 799 F.3d 1353 (11th Cir. 2015), and *Cruz v. Am. United Ins. Co.*, 580 So. 2d 311 (Fla. 3d DCA 1991), as supporting entry of summary judgment in its favor. But none of these cases support its position under the circumstances of the Aldanas' case. And the intermediate appellate court opinion Progressive cites from *Infinity v. Berges* was quashed by the Florida Supreme Court, which held that the evidence presented supported a finding of bad faith; Progressive's flawed reliance underscores the weakness of its position.

In *Williams,* Willie Earl Williams died in an automobile accident. He was survived by his wife, Beatrice, and their son, Winton, and three other children whose mother was not Beatrice. All of the surviving children were under the age of 25 at the time of their father's death and therefore qualified as "minor children" under the Wrongful Death Act. *Williams*, 745 So. 2d at 574. Before an estate was opened, two of the five beneficiaries demanded the full policy limits. *Id.* The insurers took the position that they could not pay the full policy limits to two beneficiaries because there were other beneficiaries who also had a claim and issued a global tender. *Id.* Beatrice and Winton sued the insurers for bad faith. The *Williams* court held that under *Harmon v. State Farm Mut. Auto. Ins. Co.*, 232 So. 2d 206 (Fla. 2d DCA 1970), an insurer is not obligated to settle with the first claimant who comes along. The Aldanas' claims were not the first presented, they were universally understood to be the most serious claims.

*Cruz* involved a property damage claim where the insured and insurer attempted to reach an agreement about the value of the vehicle at the time of the accident. 580 So. 3d at 311. The insurer initially valued the car at $3000 but ended with an offer of $3,500. *Id.* A jury determined the value to be $3,775, which was only $25 more than the insurer's last offer, minus the $250 deductible. The insured's bad faith claim rested on the delay between the opening and ending

17

offer, alleging she incurred costs in the form of telephone calls to the insurer and loss of use. *Cruz* has nothing to do with this case.

Progressive's reliance on *Valle* and *Mesa* is similarly misplaced. In *Valle*, the insurer was found to not have acted in bad faith after its insured caused an accident with eight people, killing one. Seven claimants agreed to take half of the policy limits between them, leaving the other half of the limits for Valle, the deceased claimant. 2010 WL 5475608, at *1. Valle's counsel declined to accept the arrangement because he thought he may have a bad faith claim against the insurer. *Id.* at *2. And in *Mesa,* the plaintiff was one of four injured parties involved in an automobile accident. One claimant proposed that the parties equally divide the available $20,000 policy limit. *Id.* Two other claimants agreed to the equal division. *Id.* However, counsel for the plaintiff declined to respond to the proposal, instead electing to file a lawsuit against the insureds. *Id.* At no point did any claimant voice an objection to the global settlement. *Id.*

In *Houston,* the insured collided with five other vehicles, one of which was occupied by the Houstons, consisting of Ms. Houston, her son A.H. II and his two brothers. 2014 WL 12576820, at *1. Progressive globally offered the $20,000 BI limits to all injured claimants and scheduled a global settlement conference. Approximately two weeks later, the Houstons filed suit against the insured for A.H. II's injuries and the Houstons' attorney refused to attend the conference. In granting the insurer's motion for summary judgment, the court noted that it was "far from clear that A.H. II was, undeniably, the most injured victim." The Houstons presented conflicting information about their injuries, changing from minor to significant and Progressive was made aware of injuries to the two other claimants. *Id.* at *6. The *Houston* court held:

> To be sure, there could perhaps be a multiple competing claimant circumstance in which the injuries to a specific victim are so grave, the injuries to the remaining potential claimants are so minor, and the concomitant documentation and information before the insurer of those injuries is so clear, that a duty arises on the

18

> part of the insurer to jettison the global settlement approach, which it unquestionably has the discretion to choose, and make a full tender to the gravely injured victim. As explained below, however, this is not such a case.

*Id.* at *7. This case falls squarely within the circumstance recognized by the *Houston* court as requiring the insurer "to jettison the global settlement approach . . . and make a full tender to the gravely injured victim." *Id.*

CSK recognized in January 2014 that apportioning the limits would be difficult given the severity of the Aldanas' injuries. Instead of taking CSK's advice and reconsidering its claims settlement plan, Progressive continued to send the same form letter. [D.E. 35-26, 30, 41, 42, 45]. Progressive had every opportunity to use the $500,000 limits to settle with the Aldanas and prevent the multi-million dollar judgment entered against its insured. *See Harmon*, 232 So. 2d 206 (an insurer may, if it chooses to, settle with one of many claimants). Progressive should have undertaken the individual analysis of each claim that CSK recommended and determined that Mr. Ang's claim presented minimal exposure to its insured. Vaka Dep. at 22:24-23:13. Progressive should have excluded Mr. Ang, who never reported any serious injuries and was being compensated by his workers compensation carrier. But Progressive refused to make any adjustments to its formulaic strategy, despite clear signs (and direct advice) that a global settlement conference was not going to work. It was Progressive's actions and inactions, not those of the claimants and their attorney, that resulted in the judgment against Mr. Pyles.

Progressive's argument that it could not settle the Aldanas' claims relies solely on the Aldanas' declination to act as the adjusters and apportion the money with the two other individuals involved in the accident. The Aldanas' attorney sent Progressive a letter on January 7, 2014, the date of Progressive's unilaterally scheduled global settlement conference, indicating that he had only learned of the conference the day prior and would not be able to attend. [D.E 35-19]. Mr. J. Davis sent another letter that day indicating that he was still investigating the facts

and that Kenneth, the two year old, remained in the ICU, but that he would be happy to discuss the matter further if Progressive should wish to call him. [D.E. 35-20]. Progressive and Mr. J. Davis then agreed to regroup in 30 days. Progressive sent out additional global settlement conference letters to the Aldanas and Mr. Ang, reiterating the same language in each letter. On March 19, 2014, Mr. J. Davis sent Progressive a letter indicating that the Aldanas medical bills were mounting towards $1 million. [D.E. 35-33]. These communications do not evidence the Aldanas' unwillingness to settle. Each of Mr. J. Davis's letters contained additional information about the severity of the Aldanas' injuries and indicated that given the serious nature of the entire family's situation, a global settlement conference was not appropriate at that time.[8]

Progressive's argument is also in contravention of well-established law that its duty to settle the Aldanas' claims is non-delegable. The duty and ultimate responsibility to take all reasonable steps to reach a settlement rests with the insurer, not any outside party. This is because "when the insured has surrendered to the insurer all control over the handling of the claim . . . the insurer must assume a duty to exercise such control and make such decisions in good faith and with due regard for the interests of the insured." *Boston Old Colony,* 386 So. 2d at 785 (citing *Liberty Mut. Ins. Co. v. Davis,* 412 F.2d 475 (5th Cir. 1969)).

*GEICO Indem. Co. v. Boike*, No. 06-80219-CIV, 2006 WL 8435402 (S.D. Fla. Oct. 16, 2006) is instructive. The court held that whether the insurer's claims settlement strategy was reasonable was for the jury to decide:

---

[8] Mr. J. Davis explained why a conference was inappropriate: "I wouldn't have dreamed for one second to put Yolanda into a global meeting, especially with her youngster still in the hospital brain damaged, probably never walk right again. And the other kids were badly injured themselves. I would never for one second brought her into a room with everybody sitting around, having millions of dollars of medical bills and asking and let somebody ask her to give part of that money to somebody else. I wouldn't put her in that position." J. Davis Dep. [D.E. 36] at 49:25-51:11.

> [V]iewing the evidence in a light most favorable to Boike as the non-moving party, the Court finds that material facts remain in dispute that must be determined by the jury, including whether it was reasonable of GEICO to delay or reject Dixon's September 3, 2003 settlement offer and whether GEICO did adequately investigate the claims and attempt to determine the degree of injury of all claimants. Thus, as a result of these disputes, summary judgment is improper on this issue. The Court also finds that the evidence presented by GEICO is not dispositive of the bad faith issue, as such evidence consists only of factors to be considered by a jury when evaluating whether acted in bad faith. *Berges*, 896 So. 2d at 680. It is the trier of fact, rather than the Court, that should determine whether or not the "totality of the circumstances" demonstrates that GEICO acted with reasonable diligence and ordinary care. *Id.* While the evidence provided by GEICO may provide some support for concluding that it acted in good faith, it is not up to this Court to substitute its judgment for that of the trier of fact on such material issues. *Id.* at 674. Accordingly, even assuming *arguendo* that no factual disputes remain concerning GEICO's actions, the decision of whether these actions constitute bad faith remains an issue that the jury must still determine.

*GEICO Indem. Co. v. Boike*, 06-80219-CIV, 2006 WL 8435402, at *5-6. The reasonableness of Progressive's claim settlement strategy is a question for the jury.

### D. Progressive's Actions are at Issue, Not the Aldanas

The Florida Supreme Court recently re-affirmed in *Harvey* that "the focus in a bad faith case is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured." *Harvey*, 259 So. 3d at 9 (quoting *Berges*, 896 So. 2d at 677). In handling the claims against its insured, "[t]he insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Boston Old Colony*, 386 So. 2d at 785. "One of the circumstances relevant to the bad-faith inquiry is the insurer's overall level of competence. . . . [and] an insurer's negligence is a relevant consideration that affects the overall assessment of the insurer's conduct." *Moore,* 633 F. App'x at 929. "Florida courts have focused not on the mindset of the injured party but on the conduct of the insurer under the circumstances. That is, rather than trying to conjure the secret

intent of the injured party, courts simply ask whether under all the circumstances known to the insurer would reasonable diligence and ordinary care dictate an offer to settle within the policy limits." *Snowden v. Lumbermens Mut. Cas. Co.,* 358 F. Supp. 2d 1125 (N.D. Fla. 2003).

Progressive's Motion acknowledges that Florida imposes an affirmative duty on the insurer to initiate settlement negotiations, obviating a requirement that the injured party make a demand for the policy limits. Despite having this affirmative duty, Progressive still argues that "objective factors" did not provide it with a reasonable opportunity to settle – referring to an alleged "silent deadline" as evidence of the Aldanas' unwillingness to settle.[9] *See Powell v. Prudential Prop. & Cas. Ins. Co.,* 584 So. 2d 12, 14 (Fla. 3d DCA 1991).

This Court should decline Progressive's invitation to speculate and infer that the Aldanas had a "silent deadline." Florida law is clear that in a case like this, the Aldanas claims were akin to "a ticking financial time bomb. Suit could be filed at any time. Any delay in making an offer under the circumstances of this case even where there was no assurance that the claim could be settled could be viewed by a fact finder as evidence of bad faith." *Goheagan*, 107 So. 3d at 439. The undisputed evidence reflects that the Aldanas waited for nine months for Progressive to settle their claim, but only received repeated form letters requiring them to apportion the policy limits between themselves and others before filing suit. The only record evidence before this Court shows that if Progressive had offered the policy limits solely to the Aldanas prior to the August 2014 lawsuit, they would have accepted them and settled their claims. Aldana Aff. (Ex. C) at ¶5; Herrera Aff. (Ex. D) at ¶5; J. Davis Dep. [D.E. 36] at 50:14-19; Feb. 19, 2016 E. Gonzalez Letter (Ex. F); Feb. 18, 2016 Piccin letter (Ex. E).

---

[9] Progressive does not cite to the record in making these baseless allegations, as there is no record evidence supporting its position.

Progressive now attempts to re-write history, relying on its hearsay claim notes that its adjuster allegedly left phone messages requesting medical information from the Aldanas. But Progressive had "determined by December 18, 2013 that the severity of the collective bodily injury liability claims warranted an offer of its combined bodily injury policy limits." Progressive Answer and Affirmative Defenses [D.E. 7] at ¶21. And if Progressive had any doubt as to the extent of the Aldanas' catastrophic injuries, it could have sent a medical authorization form rather than requiring that the Aldanas obtain, compile, and synthesize the undoubtedly large volume of medical records and bills for Progressive.[10] Progressive's speculation that the Aldanas were unwilling to settle should be rejected, as it is contrary to the record evidence. The question of whether Progressive's need for additional medical information was reasonable should be submitted to the jury.

*Gutierrez v. Yochim*, 23 So. 3d 1221 (Fla. 2d DCA 2009) rejects Progressive's argument that it could not have settled. In *Yochim,* within a month of the accident, the claimant's attorney advised Dairyland over the phone that the claimant sustained a significant spinal cord injury. *Yochim,* at 1223. Dairyland then sent the claimant a written request for medical records and bills and advised of an attorney's lien that needed to be satisfied. In response, the claimant's attorney sent a signed medical authorization form. *Id.* Months after the initial requests, Dairyland received verbal confirmation from the claimant's attorney that the claimant would be responsible for any potential liens. *Id.* Dairyland did not tender its policy limits until almost eight months after the

---

[10] Progressive's Motion argues that it made numerous requests for medical information. Progressive's corporate representative acknowledged that Progressive did not send a medical authorization form to the Aldanas in order to obtain the records itself. Progressive speculates that the Aldanas would not have executed the form. J. Richardson Dep. [D.E. 37] at 60:13-23. But the Aladanas' uninsured motorist carrier, State Farm, sent a request and received an executed medical authorization form from the Aldanas. *See* Authorization for Release of Information, attached as Ex. K. Progressive's argument is also specious: there was no need for medical records to evaluate whether the Aldanas' claims exceeded the policy's limits.

accident, and asserted that it could not tender the policy limits earlier because it was waiting for medical records from the claimant, and it needed written confirmation that the claimant would take care of a lien. *Id.* at 1225-26. The court rejected Dairyland's arguments, holding that "whether it was reasonable for Dairyland to insist on additional medical information beyond what it already knew, whether it was reasonable for Dairyland to insist on further verification of the attorney's lien issue, and whether Dairlyland reasonably handled the purported 'tender' are factual disputes that are for determination by the finder of fact." *Id.* at 1226.

In *Stalley v. Allstate Ins. Co.,* 183 F. Supp. 3d 1209 (M.D. Fla. 2016), this Court held that "[w]hile Allstate did act with some diligence at the outset of the claim . . . Allstate's arguments miss the mark to the extent that Allstate asserts that it was clearly diligent throughout the nine-month period from the June 2, 2009 accident to the January 12, 2010 tender of $1.1 million." The court's analysis noted that "[a]lthough there is evidence that [the claimant's attorney] was not forthcoming with medical records or information about [the claimant's] condition, again, the correct focus is not on the actions of [the claimant] but those of Allstate." *Id.* at 1219. And that "Allstate's assertions that it did not have sufficient damages information to negotiate do not support summary judgment in its favor." *Id.* at 1219-20.

Like in *Yochim,* and *Stalley,* a jury should decide whether Progressive's failure to offer the full policy limits solely to the Aldanas during the nine months preceding the lawsuit was reasonable and whether it handled this claim in compliance with its good faith duties. Progressive's conduct is at issue, not the Aldanas' or their attorneys.

## CONCLUSION

Progressive admits that it was obligated to "work with the insured … to identify which are the most significant exposures and make the effort to extinguish those." J. Richardson Dep.

24

[D.E. 37] at 28:7-11. The undisputed record evidence shows that Progressive did not do so, and that its refusal to make appropriate claims settlement decisions led to the catastrophic excess judgment against Mr. Pyles. "Any question about the possible outcome of a settlement effort should be resolved in favor of the insured; the insurer has the burden to show . . . that there was no realistic possibility of settlement within policy limits." *Powell*, 584 So. 2d at 14.  Progressive bears the burden "to show that there was no realistic possibility of settlement within the policy limits and that question is decided based on all the circumstances." *Rynd v. Nationwide Mut. Fire Ins. Co.* No. 8:09-cv-1556-T-27TGW, 2011 WL 4754520, \*4 (M.D. Fla. Oct. 7, 2011)(upholding the quoted jury instructions). Progressive failed to meet this burden, as the record evidence shows (at best) disputed issues of fact.

WHEREFORE, Plaintiffs move this Court for entry of an Order denying Progressive American Insurance Company's Motion for Summary Judgment [D.E. 35], and any other relief the Court deems equitable and proper.

Respectfully submitted,

VER PLOEG & MARINO, P.A.
301 E. Pine Street, Suite 790
Orlando, FL 32801
407-380-9312
407-601-7905 *facsimile*

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**
Florida Bar No. 79170
smarino@vpm-legal.com
smcgee@vpm-legal.com
**Michal Meiler**
Florida Bar No. 86522
mmeiler@vpm-legal.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF on May 10, 2019, on all counsel or parties of record on the Service List below.

/s/ Stephen A. Marino, Jr.
**Stephen A. Marino, Jr.**

## SERVICE LIST

Stephen A. Marino, Jr., Esq.
Michal Meiler, Esq.
Ver Ploeg & Marino, P.A.
301 E. Pine Street, Suite 790
Orlando, FL 32801
407-380-9312
407-601-7905 *facsimile*
smarino@vpm-legal.com
mmeiler@vpm-legal.com
smcgee@vpm-legal.com
*Counsel for Plaintiffs*

Daniel A. Martinez, Esq.
Weslee L. Ferron, Esq.
Jennifer C. Worden, Esq.
Martinez Denbo, LLC
2935 First Avenue North, 2nd FL
St. Petersburg, FL 33713
727-894-3535
727-502-9621 *facsimile*
ServiceSTP@CivilLit.com
*Counsel for Progressive American Ins. Co.*