EXHIBIT H

EXHIBIT H

CONFIDENTIAL
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION
CASE NO.:  5:18-cv-157-JSM-PRL

YOLANDA ALDANA and LEYVIER HERRERA, her husband, YOLANDA ALDANA as mother and natural guardian of KEVIN MARTINEZ, a minor, as mother and natural guardian of ANTHONY MARTINEZ, a minor, as mother and natural guardian of ALEJANDRO ALDANA, a minor, and as mother and natural guardian of KENNETH HERRERA, a minor,

        Plaintiffs,

vs.

PROGRESSIVE AMERICAN INSURANCE COMPANY,

        Defendant.
_____/

                        Ver Ploeg & Lumpkin, P.A.
                        301 E. Pine Street, Suite 790
                        Orlando, Florida
                        10:03 a.m. - 12:37 p.m.
                        January 22, 2019

                CONFIDENTIAL DEPOSITION
                        OF
                    KATHY WALLACE

     Taken on behalf of the Plaintiffs before Nancy N. Foresteire, RPR, RMR, Notary Public in and for the State of Florida at Large, pursuant to Notice of Taking Deposition in the above cause.

CONFIDENTIAL

Appearances:

STEPHEN A. MARINO, JR., ESQUIRE
Ver Ploeg & Lumpkin, P.A.
100 SE 2nd Street
Suite 300
Miami, Florida 33131
305-577-3996
Smarino@vpl-law.com
        On behalf of the Plaintiffs

DANIEL A. MARTINEZ, ESQUIRE
JENNIFER C. WORDEN, ESQUIRE
Martinez Denbo, LLC
2935 1st Avenue N
Suite 2
Saint Petersburg, FL 33713-8636
727-894-3535
Dmartinez@civillit.com
        On behalf of the Defendant.

Also Present:
Mr. James A. Dodrill
Corporate Claims Counsel, Progressive Martinez

I N D E X

Examinations                                             Page

DIRECT EXAMINATION BY MR. MARINO                          4

WITNESS REVIEW LETTER                                   106

ERRATA SHEET                                            107

E X H I B I T S

NONE

to know exactly what each exposure was.  How can you make a decision on which ones you should try and settle, if it came to that.

Q   If they had gone in January and just showed up, you would have had to make a decision anyway, right?

A   I don't know.  I don't know what would have happened.  I don't know what they would have discussed at that point.

Q   Now, here comes July, July of 2014.  As of July of 2014, no individual offers have been made, no global settlement conference has occurred, correct?

A   I continued to try and get it scheduled or to get the information, and I got absolutely nothing, no responses.

MR. MARINO:  Read back my question, please.

(The previous question was read by the reporter.)

THE WITNESS:  Yes, but like I said before, we were still trying to get the information so we could properly advise our insureds and try to get releases from everyone.

BY MR. MARINO:

Q   In early July of 2014, you got communications from the attorney for Mr. Ang, correct?

A   Yes.

Q    What was the attorney requesting?

A    I'd have to look at the letter again.

Q    You don't have it on your notes going on Page -- I think it's 62.

A    It's a letter he sent in requesting to settle Mr. Ang's policy -- I mean his claim.

Q    What did you do with that request?

A    I sent a letter advising that we weren't in a position to settle it.  We were trying to do everybody globally at the same time.

Q    Who made that decision?

A    My manager and I.

Q    Was Mr. Parnell involved in making that decision?

A    He was involved in discussing the letter and the legalities of that letter, but he doesn't have authority to tell us what to do.

Q    What do you mean "legalities of that letter"? What does that mean?

A    Because he's an attorney and he's reading a letter from another attorney.

Q    The letter says, "Hey, you're never going to settle with those guys, make me an offer."  What's the legality that he's looking at?

MR. MARTINEZ:  Form.

THE WITNESS: We were just in a position to have our, you know, claims legal help us in making sure that we're doing the legal aspect of it correctly.

BY MR. MARINO:

Q Did you and your manager confer with the insured at that time, about how to respond to Mr. Ang's request?

A We sent a copy of the letter to Mr. Bathel (phonetic) and Kathy Carson Freeman, who was at Bill Davis' office.

Q That wasn't my question. Did you confer with them? In other words, did you say to your insured, "Look, it's seven months post loss, we haven't resolved your claims, and here's the guy with the weakest claim by far asking for some kind of offer. Do you want us to explore this and see if maybe we can get rid of it for a nominal amount, and that will leave your policy limits available to satisfy these other significant injuries?"

MR. MARTINEZ: Form. Remember, answer the question. You're free to explain, if you wish, but you've got to answer his question.

THE WITNESS: Okay.

BY MR. MARINO:

Q We agree that on or about July 10th -- sorry.

We agree that in the first week of July you get a letter from the attorney for Mr. Ang, inviting a settlement offer, correct?

A     It's in July.  The note is July 17th we get a letter.

Q     I apologize.  The letter is somewhere in here.  I think it's dated July 3rd, but whatever.  You responded to that letter verbally or in writing?

A     In writing.

Q     And your written response was, "We're not going to make you an offer, we're going to wait till we have a global settlement conference"?

A     Do you have my letter?  I'd have to --

Q     What is your -- what do your notes reflect that your response was?

A     Forwarding a letter that Progressive is not in a position to settle in advance of a global settlement, because we're still trying to get all parties together to get a release for our insured, for all parties.

Q     Now, did you confer with your insured before you made a decision and sent that letter to Mr. Laird?

A     I don't recall, as I sit here.

Q     Is there any reference in your face sheet notes to having a conversation with the insured and/or

Page 100

the insured's lawyer saying, "We have an opportunity, what do you think we should do with it?"

A       They got a copy of the letter.  That's all I see.

Q       A copy of the letter you sent?

A       And it would have included a copy of his letter, yes.

Q       So after the decision was made and you broadcast the decision, your insured found out; fair?

A       Probably.

Q       Well, my point is you didn't confer with the insured prior to sending out the letter reflecting the decision that you and your manager make, correct?

A       The notes don't say that.

Q       Do you have any independent recollection of having a conversation about the decision you and your manager made before you wrote the letter?

A       No.

Q       August comes and goes, no individual offers?

A       No.  Still globally offering, trying to get the information.

Q       September comes and goes, no individual offers, correct?

A       No individual.  Still globally offering, sending letters, calling.